# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHESAPEAKE EXPLORATION LLC, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | NO. CIV-10-0519-HE |
| BP AMERICA PRODUCTION COMPANY, ET AL., | ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Chesapeake Exploration LLC ("Chesapeake") initially filed this action in state court against defendants BP America Production Co. ("BP") and three arbitrators, whom the parties refer to as "consultants." BP removed the case to this court on the basis of diversity jurisdiction and Chesapeake has filed a motion to remand the case to state court. Chesapeake argues that diversity jurisdiction sufficient to support removal is not present here since two of the consultants are citizens of Oklahoma, as is Chesapeake. BP argues the defendant consultants are "nominal" parties whose presence should be disregarded for purposes of determining diversity jurisdiction. As explained below, the court concludes the consultants are indeed nominal parties and that their citizenship should be ignored for present purposes.

**Background**

In July 2008, Chesapeake sold BP a substantial number of oil and gas properties located in eastern Oklahoma. The parties executed a "Purchase and Sale Agreement"

("PSA") which included various mechanisms for the resolution of issues or disputes arising out of the agreement. Among other things, the PSA established a post-closing period during which the parties could investigate and verify the state of Chesapeake's title to the various properties covered by the agreement. The PSA contemplated that any discrepancies would be resolved through adjustments to the purchase price. The parties were able to resolve many of the post-closing issues on their own, but certain title issues remained in dispute. The parties submitted these to a panel of three "consultants" (the "Panel") according to the terms of the PSA.

An involved and complicated arbitration process followed. The parties have described that process in some detail in their briefs, but it is unnecessary to recount it here. The circumstance giving rise to the present dispute is that, on December 3, 2009, the consultants issued an award which resolved the various title disputes but which did not determine the specific dollar amounts related to each such dispute (i.e., the dollar amounts of any adjustments to the purchase price). Instead, the Panel indicated, in a section labeled "Explanatory Comments," that it assumed the parties could calculate the resulting damages in light of its decision and the terms of the PSA. The Comments section, however, went on to provide that, "[i]f that assumption is in error and if the parties need for the Panel to make those determinations, the parties could submit arbitration position statements on those issues for the consideration of the Panel, describing the additional issues to be determined and the argument of each party on those issues." (Def.'s Mot. to Stay Ex. 9 [Doc. 14 Ex. 9]). On February 2, 2010, BP requested the Panel to "clarify and modify" certain parts of its

2

December 30 award. The Panel accepted evidence and arguments from the parties on the issues presented by BP despite objections by Chesapeake that the consideration of such post-award arguments was beyond the Panel's authority.

On April 21, 2010, Chesapeake filed the present action in state court against BP and the three consultants. It sought (1) to modify the December 30 award by deleting the Panel's "Explanatory Comments," which Chesapeake argues wrongfully extended the jurisdiction of the Panel, and (2) to enjoin the Panel from any further adjudication of these issues. As noted previously, BP then removed the action and Chesapeake moved to remand.

**Discussion**

The central issue involved in deciding Chesapeake's motion to remand is whether the consultant defendants — two of whom are Oklahoma residents — are actual parties to this case in a substantial sense or whether they are merely "nominal" parties. If they are substantial parties, then their presence destroys diversity and the case must be remanded. If they are merely nominal parties, then their presence is ignored and, as all other parties are diverse, diversity jurisdiction exists here so as to support removal.

In determining whether parties are completely diverse for jurisdictional purposes, courts look only to the residence of "real and substantial parties to the controversy" and "must disregard nominal or formal parties." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460–61 (1980). There is no mechanical or bright line rule for determining when a party should be viewed as merely nominal and the courts of appeal have analyzed the question in different ways. Chesapeake argues that Salt Lake Tribune Publishing Co. v. AT&T Corp.,

3

320 F.3d 1081 (10th Cir. 2003), determines the standard in this circuit, but that case did not involve the issue and circumstances present here. Salt Lake dealt with a situation where a non-diverse entity was added as a party after the federal suit had been commenced and the question was whether that addition destroyed diversity. Applying the rule that a later-added party does not destroy diversity unless the party was "indispensable" as of the commencement of the action, the Court of Appeals considered whether the added party had that status under the standards of Fed. R. Civ. P. 19. It concluded the party involved there was not an indispensable party and that jurisdiction was not affected. What Chesapeake argues here, however, is something different — essentially that any party which is not "indispensable" is automatically "nominal." That conclusion does not follow from anything in Salt Lake.

Other courts have applied the "real and substantial" and "nominal" standard of Navarro in various contexts. The Fifth Circuit concluded that an entity merely "holding the money" for other parties was a nominal party, stating:

> To establish that non-removing parties are nominal parties, the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court. In determining whether a party is nominal, a court asks "whether in the absence of the [party], the Court can enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or inequitable." Additionally, a party is nominal if its role is restricted to that of a "depository or stakeholder," e.g., one "who has possession of the funds which are the subject of litigation." The test is not dependent on how the plaintiff labels its complaint, but rather on the practical effect of a judgment on a given defendant. Equity is the major concern in this inquiry.

4

In re Beazley Ins. Co., 2009 WL 205859, at *4 (5th Cir. 2009) (citing Farias v. Bexar County Bd. of Trs. for Mental Health Mental Retardation Servs., 925 F.2d 866, 871 (5th Cir. 1991)) (further internal citations and quotation marks omitted). The Second Circuit concluded a collection agent suing for others in a representative capacity was a nominal party, noting that the agent was not protecting any corporate interest of its own and that the "real and substantial" parties in interest were the parties whose claims the agent pursued. Airlines Reporting Corp. v. S and N Travel, Inc., 58 F.3d 857 (2nd Cir. 1995). The thrust of these and other cases applying the Navarro standard is to focus on the parties that have an actual interest in the substantive controversy.

Here, it is clear enough that the consultants have no stake in the ultimate determination of the substantive controversy. Whatever may be the ultimate disposition of Chesapeake's claim that further activity by the consultants exceeds the scope of their authority, it won't affect the consultants in any substantive way. The parties' conduct in this case illustrates the point. After Chesapeake moved to stay arbitration proceedings, the consultants did not object to the motion and asked that the court excuse them "from any need to file Answers . . . appear at hearings, respond to future filings" or otherwise participate in the action [Doc. No. 1 Ex. 12]. This is a strong indication that the consultants themselves do not believe they have an interest in how this litigation turns out. Further, Chesapeake affirmatively declined to object to the consultant's request suggesting that, at least at that time, it also viewed the consultant's input into the litigation as irrelevant [Doc. No. 1 Ex. 17]. The bottom line is that Chesapeake's present effort to focus on the consultants through a

carefully tailored request for relief cannot avoid the reality that the substantive controversy is between it and BP. The "consultants" are, after all, arbitrators whose job is to resolve the controversy, not to benefit in some substantive way from it. *See* Aberle Hosiery Co. v. Am. Arbitration Ass'n, 337 F. Supp 90 (E.D. Penn. 1972), (arbitrators had "no interest in the subject matter of this action," hence the American Arbitration Association was a nominal party and it's citizenship not determinative of jurisdiction). They are nominal parties whose citizenship is ignored for present purposes.

Chesapeake also argues that the amount in controversy requirement of 28 U.S.C. § 1331 is not met because it is not seeking monetary damages. The absence of such a request is not determinative. "In cases seeking declaratory and injunctive relief, the amount in controversy is measured by the value of the object of the litigation." Lovell v. State Farm Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2000) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). In applying this standard, the Tenth Circuit follows the "either viewpoint rule" which "considers either the value to the plaintiff or the cost to the defendant of injunctive and declaratory relief." *Id.* The underlying dispute here involves BP's request to the consultants for modification of their December 30 award in light of BP's "claims that "Chesapeake refuses to pay all but $11,526,434 of the $33,791,736 'due' under [that] Award." (Petit. ¶ 56.) Whether the present dispute is viewed as involving either the potential value of the requested injunctive and declaratory relief to Chesapeake or the cost of that relief to BP, the result is the same. The pleadings plainly put in excess of $75,000 in issue.

Chesapeake's other arguments in support of remand fail in light of the court's conclusion that the consultant defendants are nominal parties. It argues that removal was improper because the consultant defendants failed to consent, but the consent to removal of nominal parties is unnecessary. Acostsa v. Master Maintenance and Constr. Inc., 452 F.3d 373, 379 (5th Cir. 2006); NPI, Inc. v. Pagoda Ventures, Ltd., 2008 WL 3387467 (N.D. Okla., Aug. 8, 2008). Chesapeake also argues that 28 U.S.C. § 1441(b)'s prohibition on removal to the home state of any defendant applies here, but that rule is also inapplicable to nominal defendants.

## Conclusion

As diversity jurisdiction is present as a basis for removal, and because no other impediments to removal have been identified, Chesapeake's motion to remand [Doc. #14] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 21st day of July, 2010.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE