**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHESAPEAKE EXPLORATION, L.L.C. | ) | |
| and CHESAPEAKE INVESTMENTS, | ) | |
| an Oklahoma Limited Partnership, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-10-519-M |
| | ) | |
| BP AMERICA PRODUCTION | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is defendant BP America Production Company's ("BP") Motion for Summary Judgment, filed February 15, 2012. On March 7, 2012, plaintiffs Chesapeake Exploration, L.L.C. and Chesapeake Investments filed their response. BP's reply was filed on March 21, 2012. Also before the Court is Plaintiffs' Corrected Motion for Summary Judgment, filed March 4, 2012. BP's response was filed April 9, 2012. Chesapeake Exploration, L.L.C. and Chesapeake Investments' reply was filed April 30, 2012. Based upon the parties' submissions, the Court makes its determination.

I.    Background

BP is a corporation organized under the laws of the State of Delaware, having its principal place of business outside of the State of Oklahoma. Chesapeake Exploration, L.L.C is a limited liability company whose sole member is Chesapeake Energy Corporation. Chesapeake Energy Corporation ("Chesapeake") is an Oklahoma corporation having its principal place of business in Oklahoma. Chesapeake Investments ("Chesapeake") is a limited partnership whose sole general

partner, at all relevant times, is Aubrey McClendon, a resident of Oklahoma.

This case arises out of Chesapeake's July 2008 sale to BP of a large number of oil and gas properties located in eastern Oklahoma. The sale was pursuant to a "Purchase and Sale Agreement" ("PSA"), which included various mechanisms for the resolution of title disputes arising out of the agreement including a post-closing period during which the parties could investigate and verify the state of Chesapeake's title to the various properties covered by the agreement.

Section 2.2.14 of the PSA sets forth a procedure for dealing with title disputes between the Seller/Chesapeake and the Buyer/BP. Section 2.9 of the PSA sets forth a post-closing procedure for submission of all accounting calculations and final adjustments to the purchase price taking into account all adjustments provided for in the PSA. Section 2.2.14 and Section 2.9 both provide for arbitration should the parties fail to reach agreement. In June 2009, the parties invoked arbitration pursuant to § 2.2.14 of the PSA to resolve certain title disputes. Pursuant to § 2.2.14 of the PSA, the parties selected title arbitrators and submitted written statements of their positions. On July 7, 2009, Tim Harrington, CFO of BP, wrote a letter formally notifying Chesapeake of its acceptance of $59,857,470.00 as the minimum price adjustments owed to BP based on agreed purchase price adjustments for certain title defects. Mr. Harrington also noted BP's continued participation in the Woodford title arbitration including any associated incremental reimbursement obligations. Finally, Mr. Harrington noted the reservation of BP's "rights with regard to any similar issues that currently exist or emerge for the ongoing Woodford title arbitration or the Fayetteville transaction." *See* Exhibit 11, Plaintiffs' Corrected Motion for Summary Judgment. On July 10, 2009, Douglas J. Jacobson, Executive Vice President Acquisition and Divestitures of Chesapeake Energy, responded concurring with BP's proposal. Mr. Jacobson agreed to tender payment of the $59,857,470.00

evidencing the Agreement. Chesapeake paid the $59,857,470.00 to BP.   *See* Exhibit 12, Plaintiffs'

Corrected Motion for Summary Judgment.

The remaining disputed title matters were submitted to arbitration. This process resulted in

an Award issued by the arbitrators on December 30, 2009.  The Award was later supplemented and

clarified by certain rulings by the Arbitration Panel.    The Arbitration Panel decided certain

identified title defect claims in BP's favor totaling $11,526,434 in value.  It decided benefit claims

in Chesapeake's favor totaling $3,727,031.  It decided other title credit claims against Chesapeake.

In their Award the arbitrators made the following explanatory comments:

> The Panel has made no effort to determine, and the Panel makes no
> ruling herein, whether the threshold levels under the Purchase and
> Sale Agreement have been satisfied in order for any actual increases
> or decreases in amounts paid and/or received to result from the
> individual determinations below.  The Panel assumes that, with the
> determinations made below, the parties can arrive at the impact of the
> Panel's rulings on the additional amounts to be paid and/or received
> by each of the parties.  If that assumption is in error and if the parties
> need for the Panel to make those determinations, the parties should
> submit arbitration position statements on those issues for the
> consideration of the Panel, describing the additional issues to be
> determined and the argument of each party on those issues.

Panel December 30, 2009 Final Award, Exhibit 11, Plaintiffs' reply to Defendant's response to

Plaintiffs' Motion for Summary Judgment.

On January 6, 2010, counsel for Chesapeake sent an e-mail to the Panel thanking them for

their conditional award of December 30, 2009 and noting several properties submitted for

consideration had not been addressed. *See* BP's Motion to Stay Case Pending Completion of

Arbitration Proceedings, exhibit 11.  On January 14, 2010, in response to the Panel's December 30,

2009 Award, BP accepted the conditional awards upon payment by Chesapeake and sought

clarification on the conditional award for specific title defects. *See* BP's Motion to Stay Case

Pending Completion of Arbitration Proceedings, exhibit 13.  Disagreeing as to the final effect of the

Panel's ruling, on February 2, 2009, BP further requested the Panel to clarify and modify certain

parts of its December 30, 2010 Award.  *See* BP's Motion to Stay Case Pending Completion of

Arbitration Proceedings, exhibit 15.  The parties submitted their arguments on the issues presented

despite objections by Chesapeake that the consideration of such post-award arguments was beyond

the Panel's authority.

On April 21, 2010, Chesapeake filed the instant action in Oklahoma County District Court,

Case No. CJ-10-517.  It sought (1) to confirm the December 30, 2009 Award by deleting the Panel's

"Explanatory Comments," which Chesapeake argues wrongfully extended the jurisdiction of the

Panel, (2) to vacate all post-December 30, 2009 rulings by the Panel, (3) to enjoin the Panel from

any further adjudication of these issues, and (4) to declare the Panel's task complete.  On April 30,

2010, Chesapeake's Motion to Stay Post-Award Arbitration Proceedings was filed in the state court

action.

On May 17, 2010, BP removed this matter from state court to this Court.[1]  On October 12,

2010, this Court granted BP's motion to stay litigation pending completion of the arbitration

proceedings and denied Chesapeake's motion to stay post-award arbitration proceedings.  On August

26, 2011, this Court granted the parties' competing motions to confirm the December 30, 2009

Award.[2]  The Court also directed the parties to confer and submit, if possible, a joint proposal for

---

[1]This case was originally assigned to Judge Heaton and was transferred to Judge Miles-LaGrange after the recusal of Judge Tim Leonard on February 1, 2012.

[2] The Court confirmed the Panel's determination that:

> (1)   BP has prevailed on Title Defect claims totaling $11,526,434 in value, as more fully set forth in the Panel's December 30, 2009, order,

resolving the remaining issues including BP's claim to the additional $22,265,302, as well as the entitlement to costs.  Both parties now seek summary judgment.

II.      Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

---

(2)  Chesapeake has prevailed on Title Credit claims totaling $3,727,031 in value, as more fully set forth in the Panel's December 30, 2009, order, and

(3)  there are no Credit Claims warranting an adjustment in the purchase price, as more fully set forth in the Panel's December 30, 2009, order.

III.    Discussion

A.    BP's Motion for Summary Judgment

In its motion for summary judgment, BP seeks an order finding (1) that Chesapeake has failed to pay it $22,265,302 in Agreed Title Defects pursuant to the PSA, (2) that Chesapeake has presented insufficient evidence on its affirmative defenses, and (3) that BP is entitled to judgment in the amount of $22,265,302, plus interest and reasonable attorney's fees and costs.  BP contends that "after months of negotiations over title issues on hundreds of properties" the parties agreed to $116,234,556 in title defects which Chesapeake was to reimburse to BP.[3]  BP contends after deducting the $35,000,000 deductible or threshold provided for in the PSA, Chesapeake only paid $58,969,253 leaving a balance of $22,265,302 owed to BP.

BP contends during an April 2009 telephone conversation between Brian Exline, Chesapeake's Vice President, Acquisitions and Divestitures, and Brandon Kastman, a BP project manager, Chesapeake agreed to pay BP at a later date for the agreed title defects equivalent to the title credits not awarded to Chesapeake during title arbitration.  BP contends Chesapeake was seeking a total of $22,556,302 in title arbitration.   BP contends the July 7, 2009 offer letter sent by BP's chief financial officer to Chesapeake only resolved post-closing adjustments and certain other agreed title defects that were owed to BP regardless of the outcome of then pending title arbitration. BP contends the July 7, 2009 offer letter only referenced the "minimum price adjustment" owed to BP and that Chesapeake is unable to prove that BP relinquished its right to the unpaid $22,265,302 in agreed title defects.  Finally, BP contends Chesapeake's accord and satisfaction defense fails

_____

[3]The PSA provided for a $35,000,000 deductible or threshold, so the $116,234,556 resulted in a purchase price of $81,234,556.

6

because it was unsupported by any consideration.

Chesapeake admits that subsequent to closing and prior to April, 2009, Chesapeake acknowledged $116,234,556 in title defect value and with the application of the $35,000,000 aggregate defect threshold, the title defects sub-totaled $81,234,556. Chesapeake contends that on April 9, 2009, BP submitted an Exception Report to Chesapeake which identified contested items in the amount of $96,277,929. Chesapeake contends on April 24, 2009, Chesapeake submitted an itemized response to BP's Exception Report agreeing to $59,867,470 of BP's exceptions. Chesapeake's Brian Exline states at no time during his April, 2009 telephone conversation with Brandon Kastman did he commit to any agreement that the $59,867,470 would be supplemented. In his affidavit Mr. Excline states he "never made a Final Statement settlement offer to Mr. Kastman, nor did I, as Mr. Kastman knew, have the authority to do so." *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment, Exhibit 7, pg. 2.

Chesapeake contends BP's July 7, 2009 offer to settle letter constituted a settlement and release of the remaining $22,265,302 in agreed title defects. BP's July 7, 2009 letter signed by Tim Harrington states:

> It is my understanding that BP and Chesapeake staff working diligently have resolved a number of the Woodford title defects and audit exceptions BP identified during the course of its post closing due diligence. Based on the documentation I have reviewed, I believe that both BP and Chesapeake have reached consensus regarding the minimum price adjustments owed to BP which is $59,857,470 as evidenced by Mr. Hank Scheel's notice of April 24th, 2009 to BP's Mr. Brad Bangle (Attachment A).
>
> In the spirit of strategic cooperation and to minimize costs for both Parties, BP has decided and is hereby formally notifying Chesapeake of its acceptance of Chesapeake's Final State as provided by Mr. Scheel on April 24th, 2009. Accordingly, BP is willing to withdraw from the Final Statement arbitration proceeding that has been

7

ongoing pursuant to Article 2.9 of the Agreement upon payment of the $59,857,470 by Chesapeake within five (5) days from the date of this letter as provided for in Article 2.9 and 2.2.14 of the Agreement.

We will continue our participation in the Woodford title arbitration and look forward to the timely resolution of that process, which we anticipate being brought to closure before the end of 3Q, 2009, including any associated incremental reimbursement obligations. Please note, the settlement of the Woodford Final Statement issues are not intended to be precedent setting and BP reserves all its rights with regard to any similar issues that currently exist or emerge for the ongoing Woodford title arbitration or the Fayetteville Transaction.

Please find included as Attachment "B" an invoice and wiring instructions for the $59,857,470 associated with the Final Statement. As mentioned, we are taking this action in the spirit of strategic cooperation and in an attempt to avoid continued costly arbitration and potential litigation.  In the event Chesapeake elects not to pay the $59,857,470 within the five (5) days, BP will continue aggressively pursue the ongoing Final Statement arbitration process and reserves all its rights under the Agreement and at Law.

If you would like to discuss this further, please do not hesitate to call me at (281) 366-3077.

BP's Motion for Summary Judgment, exhibit 19, pg.1.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Chesapeake contends pursuant to the PSA there are only two mechanisms available to resolve this dispute: accounting arbitration and title arbitration.  Chesapeake contends the above July 7, 2009 BP offer and $58,969,253 payment by Chesapeake finally settled the accounting arbitration for $58,969,253 and that with the payment of what Chesapeake contends should be the final Arbitration Panel Award there remains no bases for BP to pursue its claim for $22,265,302. Viewing the evidence in the light most favorable to Chesapeake and viewing all reasonable inferences in Chesapeake's favor, the Court finds Chesapeake has presented sufficient evidence to create a genuine issue of material fact as to whether BP's July 7, 2009 offer and Chesapeake's $58,969,253

payment  resolved BP's counterclaim that an additional payment of  $22,265,302 in agreed title defects is still outstanding.   Accordingly, the Court finds that BP is not entitled to summary judgment as to its counterclaim of $22,265,302.

      B.       Chesapeake's Motion for Summary Judgment

Chesapeake contends the sole issue before the Court is BP's counterclaim where it seeks a declaration of the rights and obligations of the parties as a consequence of the July 7, 2009 agreement and any contemporaneous agreements surrounding the execution of the July 7, 2009 agreement and the commencement of the relevant title arbitration.  Chesapeake contends BP's July 7, 2009 letter making the $59,857,470 offer and the July 10, 2009 letter from Chesapeake accepting BP's offer amounts to a final settlement agreement between the parties.  After the payment of the $59,857,470,  Chesapeake contends it never owed, withheld, or conditionally or unconditionally agreed to pay BP an additional $22,265,302 in title defects.  Chesapeake contends because of the July 7, 2009 settlement agreement of the parties and the correct interpretation of the PSA, BP's request for an additional award is barred by the doctrines of parol evidence, statute of frauds, waiver, estoppel, accord and satisfaction, arbitration and award, and account stated and settled.  Chesapeake also contends it should be granted summary judgment as a matter of law based solely on the undisputed facts.  The Court disagrees.  Upon review of the parties' submissions and viewing the evidence in the light most favorable to BP,  the Court finds there is a factual dispute as to whether BP's July 7, 2009 offer and Chesapeake's acceptance of BP's offer of $59,857,470 in agreed purchase price adjustments amount to a final settlement agreement pursuant to the PSA as to all claims between the parties.  Specifically, whether BP's counterclaim for an additional $22,265,302 in agreed title defects is owed.  Accordingly, the Court finds that Chesapeake is not entitled to

summary judgment as to BP's counterclaim for an additional $22,265,302 in agreed title defects.

       C.      <u>Chesapeake's Affirmative Defenses</u>

      Chesapeake also contends it is entitled to summary judgment as a matter of law.  Specifically,

Chesapeake argues it is entitled to summary judgment on the following affirmative defenses: (1) the

July, 2009 final statement is an accord and satisfaction, (2) the $59,857,470 payment settles the

account, (3) the parol evidence rule excludes consideration of any prior oral agreements, (4) any

oral agreement between the parties violates the statute of frauds, (5) any dispute not submitted by

April 27, 2009 is deemed waived, and (6) the July, 2009 agreement resolves BP's counterclaim.

BP contends Chesapeake has failed to establish the elements required for the six theories asserted

and summary judgment should be denied as to Chesapeake's affirmative defenses.

       1.      <u>Accord and Satisfaction</u>

      The Restatement (2d) of Contracts states:

> (1)    An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty.  Performance of the accord discharges the original duty.

> (2)    Until performance of the accord, the original duty is suspended unless there is such a breach of the accord by the obligor as discharges the new duty of the obligee to accept the performance in satisfaction.  If there is such a breach, the obligee may enforce either the original duty or any duty under the accord.

> (3)    Breach of the accord by the obligee does not discharge the original duty, but the obligor may maintain a suit for specific performance of the accord, in addition to any claim for damages for partial breach.

Restatement (2d) of Contracts § 218.

      Chesapeake contends BP's offer to accept its proposed final statement dated April 24, 2009

and the withdrawal from the arbitration in exchange for Chesapeake's immediate payment of $59,857,470 constitutes an accord and satisfaction of its obligation to BP. BP contends even with the submission of its July 7, 2009 offer with copy of Chesapeake's response to BP's exception report attached, there was still no meeting of the minds as to whether an additional $22,265,302 in final title defects were to be paid should Chesapeake's arbitration claims fail. BP contends Chesapeake fails to present sufficient evidence to prove an accord and satisfaction. BP contends Chesapeake has the burden and must prove accord and satisfaction. Specifically, BP contends "it must clearly appear from the evidence that there was in fact and in reality a meeting of the minds" that Chesapeake's $59,857,470 payment satisfied all claims and no such evidence is before the Court. *Fast Motor Co. v. Morgan,* 52 P.2d 25, 27 (Okla. 1935).

Having reviewed the parties' submissions, viewing all reasonable inferences in BP's favor, the Court finds there is a genuine issue of material fact concerning whether there was a meeting of the minds as to whether Chesapeake was to pay an additional $22,265,302 in agreed title defects depending on the outcome of the ongoing arbitration proceedings. Accordingly, the Court denies summary judgment as to Chesapeake's accord and satisfaction affirmative defense.

2.    <u>Parole Evidence Exclusion</u>

Chesapeake contends any prior discussions, representations or negotiations between the parties, pursuant to the parole evidence exclusionary rule, are superseded by the July, 2009 settlement agreement and the payment of $59,857,470 by Chesapeake. Specifically, Chesapeake contends the parole evidence rule bars the consideration of the April 2009 Exline-Kastman telephone conversation where BP contends the agreement was made to pay the $22,265,302 upon completion of the remaining title arbitration proceedings. BP contends in order to interpret the July, 2009

settlement agreement the Court must consider the PSA and the parties' undisputed agreement on $116,234,556 in Agreed Title Defects. BP contends it is clear from the actual wording of the July, 2009 settlement agreement that all three documents, the PSA, the $116,234,556 agreement and the July, 2009 settlement agreement comprised substantially one transaction and should be interpreted together. *See Chesapeake Exploration Ltd. P'ship v. Chesapeake Exploration Limited P'ship*, 103 P.3d 621 (Okla. Civ. App. 2004) (*citing* Okla. Stat. tit. 15 § 158). BP contends the intent of the July, 2009 agreement was to concede Chesapeake's position on some accounting disputes based upon the parties' undisputed agreement on $116,234,556 in exchange for Chesapeake paying the $59,857,470, the minimum purchase price adjustment due at the time. BP contends the July, 2009 agreement in fact reserves the parties' right to continue with the title arbitration without waiving any rights or claims to further purchase price adjustments that might result once the title arbitration was concluded. BP also contends the $59,857,470 was the agreed minimum purchase price adjustment regarding certain title defects as of July, 2009 and whether any more purchase price adjustments were due beyond this point depended on the outcome of the ongoing title arbitration. BP contends, as noted in the July, 2009 settlement, the parties agreed to continue title arbitration and were waiving no rights or claims to further purchase price adjustments that might result once title arbitration concluded. Finally, BP contends the parties' intent as to further purchase price adjustments can be interpreted from the wording of the agreement without reference to any parole evidence.

Having reviewed the parties' submissions, viewing all reasonable inferences in BP's favor, the Court finds there is a genuine issue of material fact as to whether BP bases its counterclaim for an additional $22,265,302 in agreed title defects on the consideration of inconsistent parole evidence. Specifically, the Court finds there is a genuine issue of material fact concerning whether

certain prior discussions, representations or negotiations between the parties are in fact inconsistent

parole evidence as argued by Chesapeake or an integration of the parties agreement as argued by

BP.[4] Accordingly, the Court denies summary judgment as to Chesapeake's parole evidence

exclusion affirmative defense.

### 3.  Account Stated and Settled

Chesapeake also contends its acceptance of BP's July 7, 2009 settlement offer and payment

of $59,857,470 constitutes an account stated and settled.  BP contends, as with accord and

satisfaction, for an account to be settled all parties must understand the settlement offer and payment

to be a final adjustment.  *See Moyer v. Closs*, 97 P.2d 901, 903 (Okla. 1940).  BP contends the plain

language of its July 2009 offer cannot be reconciled with a final price adjustment.  As noted above,

BP's July 2009 offer specifically notes:

> We will continue our participation in the Woodford Title arbitration
> and look forward to the timely resolution of that process, which we
> anticipate being brought to closure before the end of 3Q, 2009,
> including any associated incremental reimbursement obligation.
> Please note, the settlement of the Woodford Final Statement issues
> are not intended to be precedent setting and BP reserves all its rights
> with regard to any similar issues that currently exist or emerge for the
> ongoing Woodford title arbitration or the Fayetteville Transaction.

BP's Motion for Summary Judgment, exhibit 19, pg.1.

Having reviewed the parties' submissions, viewing the evidence in the light most favorable

to BP and viewing all reasonable inferences in BP's favor, the Court concludes that there exists a

dispute as to whether BP understood its July 7, 2009 to be a final offer resolving all disputes before

---

[4]In light of the Court's Order, the Court will reserve its decision as to whether any prior
discussions, representations or negotiations between the parties is in fact inconsistent parol
evidence, until such time that the substance and the context of any such evidence is properly
before the Court.

13

the parties.  Specifically, in its July 7, 2009 offer, BP specifically "reserves all its rights with regard to any similar issues that currently exist or emerge for the ongoing Woodford title arbitration or the Fayetteville transaction."   Accordingly, Chesapeake is not entitled to summary judgment on its account stated and settled affirmative defense.

4.    Consent

Chesapeake also contends with its acceptance of BP's offer, the immediate payment of the $59, 857,470 and discharge of the PSA 2.9 Accounting Referees, the parties consented to  BP's July 9, 2009 offer being a fully executed contract that extinguishes BP's $22,265,302 claim.  Chesapeake also again argues the exclusion of all oral negotiations or stipulations concerning this matter.

Upon review of the parties' arguments and submissions, viewing the evidence in the light most favorable to BP and viewing all reasonable inferences in BP's favor, the Court finds the evidence is insufficient to support the conclusion that the parties have consented to the exclusion of BP's $22,265,302 claim.  Specifically, BP denies having consented to the exclusion of its $22,265,302 claim as evidenced by its counterclaim.  Therefore, the Court finds that Chesapeake's motion for summary judgment on its consent affirmative defense is denied.

5.    Statute of Frauds

Chesapeake also contends BP's claim is barred by the statute of frauds.  Specifically, Chesapeake contends the PSA as an agreement for the sale of an interest in real property in Oklahoma is governed by the statute of frauds.  *See* Okl. Stat. tit. 15, § 136. *See also Sperling v. Marler,* 963 P.2d 577, 580 (Okla. 1998).  Additionally, Chesapeake contends pursuant to  PSA § 15.10,  a written amendment signed by the party to be charged is required to achieve a contract revision to effect that downward price adjustments occur as a result of an arbitrator's refusal to

14

award an upward price adjustment for title benefits.  Chesapeake also notes Okla. Stat. tit. 15, § 237 specifies:  "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

BP contends it " is not arguing that there was an oral agreement or that the PSA was amended in anyway."  BP's Motion for Summary Judgment, pg. 24.  BP contends its $22,265,302 claim is based on  written agreements: (1) the PSA, (2) the parties' agreement as to $116,234,556 in Agreed Title Defects, resulting in a purchase price adjustment of $81,234,556 (after deducting the $35,000,000 aggregate threshold), (3) BP's July 2009 letter agreement providing for payment of $59,857,470 for certain agreed title defects; and (4) the title arbitrators' award denying Chesapeake's $22,265,302 offset.

The Court, having reviewed the parties' submissions, viewing the evidence in the light most favorable to BP and viewing all reasonable inferences in BP's favor, finds there is a genuine issue of material fact concerning Chesapeake's statute of frauds affirmative defense, specifically, whether BP's $22,265,302 counterclaim is based on an oral agreement or an amendment to the PSA which BP denies.  Accordingly, the Court denies summary judgment as to Chesapeake's statute of frauds affirmative defense.

6.    <u>Waiver</u>

The PSA § 2.2.13 states:

> If the Sellers and the Buyer are not in agreement as to whether a Title Defect or Title Benefit exist or the amounts thereof, either Party shall have a period of thirty (30) days after the Defect Date for Title Defects to submit the dispute to arbitration as provided in Section 2.2. 14 or waive such dispute.

Pursuant to § 2.2.13, Chesapeake also contends BP has waived any claim to the $22,265,302 in

agreed title defects because BP failed to submit this matter in its April 27, 2009 Notice of Arbitration.  Chesapeake contends because the parties explicitly agreed to make time of the essence in the performance of the PSA, the agreed deadline for the submission of claims is fixed and BP waived any claim not timely submitted to the Panel. BP contends the PSA's waiver provision is entirely inapplicable because there was no dispute regarding the $22,265,302 in agreed title defects withheld from the final statement.    BP contends the fact that there was no dispute as to the $22,265,302 balance not being reflected in Chesapeake's  adjustments to the final statement was made clear during the April 24, 2009 telephone conversation between Kastman and Exline.  BP contends without a dispute as to the $22,265,302 in agreed title defects there was nothing to submit to title arbitrators.  BP also argues under Oklahoma law that "the doctrine of waiver focuses on the intention of the party against whom the waiver is asserted; that is, the party must have the intent to waive its right."  *See Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1013 (10th Cir. 2006).

Having reviewed the parties' submissions, viewing the evidence in the light most favorable to BP and viewing all reasonable inferences in BP's favor, the Court finds there is a genuine issue of material fact concerning whether it was BP's intent to waive its claim to the $22,265,302 in agreed title defects. Accordingly, the Court denies summary judgment as to Chesapeake's waiver affirmative defense.

IV.   Conclusion

For the reasons set forth above, the Court DENIES Defendant/Counterclaimant BP America

Production Company's Motion for Summary Judgment [docket no. 69]; the Court also DENIES

Plaintiffs' Corrected Motion for Summary Judgment [docket no. 80].

**IT IS SO ORDERED this 25th day of September, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

17